**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MINNESOTA LIFE INSURANCE COMPANY,

Plaintiff,

v.

EDIE ANN JARVIS and JARVIS FINANCIAL INC.,

Defendants.

Case No. 26-cv-1550 (LMP/DTS)

**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT**

---

Molly Renee Hamilton Cawley, **Messerli & Kramer P.A., Minneapolis, MN**, for Plaintiff.

Plaintiff Minnesota Life Insurance Company seeks a default judgment against Defendants Edie Ann Jarvis and Jarvis Financial Inc. ("JFI"). ECF No. 10. Minnesota Life has demonstrated its entitlement to a default judgment against Jarvis, but not JFI, so its motion for default judgment is granted in part.

**BACKGROUND**

Jarvis, working through JFI, is a former insurance broker for Minnesota Life. ECF No. 1 ¶ 4.[1] In January 2016, Jarvis executed a Fixed Annuity Product Broker Agreement, which appointed Jarvis as an agent of Minnesota Life to sell its insurance policies. ECF No. 1-1 at 2–7. Relevant here, the Fixed Annuity Product Broker Agreement provides that if Minnesota Life "refund[s] a purchase payment to a customer," then Jarvis is required to

---

[1] On a motion for default judgment, the Court must accept as true the facts alleged in the complaint. *See Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

"refund to [Minnesota Life] any commission [she] received in connection with the refunded purchase payment." *Id.* at 4. In March 2017, Jarvis executed a Broker Sales Contract which appointed Jarvis as a sales broker for Minnesota Life. ECF No. 1-1 at 8–15. The Broker Sales Contract provides that Minnesota Life has "the right to refund any premiums paid on a policy if [it] believe[s] this is proper where a policy is rescinded, cancelled, or not accepted, or for any other reason [it] believe[s] is proper." *Id.* at 9. And like the Fixed Annuity Product Broker Agreement, the Broker Sales Contract requires Jarvis to return "all earnings which [Minnesota Life] credited to [her] on any premiums" that are refunded. *Id.* Jarvis signed both the Broker Sales Contract and the Fixed Annuity Product Broker Agreement, although it does not appear that JFI signed these agreements. *Id.* at 7, 16.

In 2019, Minnesota Life received demands from a policyholder seeking rescission of a life insurance policy that Jarvis issued through JFI. ECF No. 1 ¶ 11. After an investigation, Minnesota Life learned that structured cash flow financing was used to pay premiums for this policy. *Id.* ¶ 12. Neither Jarvis nor JFI disclosed to Minnesota Life that structured financing was used to fund the policy's premiums, and, had Minnesota Life known that fact, it would not have issued the policy. *Id.* ¶¶ 12–13. Minnesota Life accordingly rescinded the policy and refunded the premiums paid on the policy. *Id.* ¶ 14. After rescinding the policy, Minnesota Life concluded that Jarvis and JFI were responsible for paying back $78,077.32 in commissions that had been credited to them on the now-refunded premiums. *Id.* ¶ 16.

On December 2, 2025, Minnesota Life sent Jarvis and JFI a letter requesting payment of $78,077.32 in earned commissions. ECF No. 1-2. Neither Jarvis nor JFI agreed to repay the earned commissions, so Minnesota Life brought this action against Jarvis and JFI on February 20, 2026, invoking the Court's diversity jurisdiction.[2] ECF No. 1. The complaint asserts three claims against Jarvis and JFI: (1) breach of contract (specifically, breaches of the Broker Sales Contract and the Fixed Annuity Product Broker Agreement); (2) unjust enrichment; and (3) promissory estoppel. *Id.* ¶¶ 18–39.

The summons and complaint were personally served on Jarvis and JFI on March 26, 2026. *See* ECF Nos. 5, 5-1. Neither Jarvis nor JFI answered the complaint in the time permitted by Federal Rule of Civil Procedure 12(a), so Minnesota Life applied for an entry of default pursuant to Rule 55(a). ECF No. 6. The Clerk of Court entered default against Jarvis and JFI on May 19, 2026. ECF No. 8. Minnesota Life served Jarvis and JFI with the Clerk's entry of default by certified mail on June 4, 2026. ECF No. 9. Those mailings were returned to Minnesota Life as "refused" and "unable to forward." ECF No. 13-1 at 2. On June 23, 2026, Minnesota Life moved for default judgment against Jarvis and JFI. ECF No. 10. To date, neither Jarvis nor JFI have appeared in this action.

---

[2] The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332. Minnesota Life alleges that it is a citizen of Minnesota, and that Jarvis and JFI are citizens of Florida, meaning that complete diversity is present. ECF No. 1 ¶¶ 1–3; *see OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted) ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."). The amount-in-controversy in this case also exceeds $75,000. *See* ECF No. 1 ¶ 25.

## ANALYSIS

"[D]efault judgments are not favored by the law and should be a rare judicial act" because "there is a judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (internal quotation marks omitted) (citations omitted). Nevertheless, federal courts may enter default judgment against a party who fails to file a responsive pleading to a complaint or otherwise defend against a lawsuit. *See* Fed. R. Civ. P. 55. Determining whether a default judgment should be entered is a three-step process: (1) determining whether a defendant is in default; (2) determining whether the unchallenged facts in the record constitute a legitimate cause of action against the defendant; and (3) whether the plaintiff has sufficiently proven damages. *See Erickson v. Sawyer*, 650 F. Supp. 3d 758, 762 (D. Minn. 2023).

### I. Whether Jarvis and JFI are in Default

Here, Jarvis and JFI are plainly in default. Minnesota Life sought and received a Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a). ECF Nos. 6, 8. And despite being served with the summons and complaint, and with the Clerk's Entry of Default, neither Jarvis nor JFI have answered the complaint or otherwise appeared in this action.[3] ECF Nos. 5, 5-1, 6, 8, 9. A party's "refusal to respond to the litigation" justifies a default judgment. *Hall v. T.J. Cinnamon's, Inc.*, 121 F.3d 434, 435 (8th Cir. 1997).

[3] Because neither Jarvis nor JFI have appeared in this action, Minnesota Life did not need to serve its motion for default judgment on them. *See Trs. of the St. Paul Elec. Constr. Indus. Fringe Ben. Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1065 (D. Minn. 2007).

## II. Whether the Pleadings Establish a Legitimate Cause of Action Against Jarvis and JFI

Upon default, the factual allegations in the complaint are deemed to be admitted and are accepted as true, except those relating to the amount of damages. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). But even if default judgment is otherwise warranted, "it is nonetheless incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (internal quotation marks omitted) (citation omitted). The next question, then, is whether the "unchallenged facts" in the record "constitute a legitimate cause of action" against Jarvis and JFI. *Id.* Minnesota Life's default-judgment motion focuses on its breach-of-contract claims against Jarvis and JFI, ECF No. 11 at 3, so the Court will likewise focus on that claim.

Under Minnesota law,[4] a breach-of-contract claim has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018) (citation omitted). Here, there is no dispute that Jarvis formed a contract with Minnesota Life when she executed the Broker Sales Contract and the Fixed Annuity Product Broker Agreement. ECF No. 1-1 at 7, 16. Minnesota Life also alleges

[4] Both the Broker Sales Contract and the Fixed Annuity Product Broker Agreement provide that they are to be governed by and construed in accordance with Minnesota law. ECF No. 1-1 at 5, 11.

that it performed all conditions precedent to those agreements. ECF No. 1 ¶ 20. Minnesota Life has also demonstrated a breach of both the Broker Sales Contract and the Fixed Annuity Product Broker Agreement. Under both agreements, Minnesota Life is afforded broad discretion to refund premiums or payments made by a customer. ECF No. 1-1 at 4, 9. And under both agreements, Jarvis is required to repay any commissions that she earned because of the refunded premiums. *Id.* Minnesota Life alleges that it refunded premiums on a policy issued by Jarvis, but that Jarvis has not repaid the commissions she earned on that policy, causing Minnesota Life economic damage. ECF No. 1 ¶¶ 11–17. Those "unchallenged facts" demonstrate a "legitimate cause of action" for breach of contract against Jarvis, so Minnesota Life is entitled to default judgment against her. *Glick*, 944 F.3d at 718.

The same cannot be said for JFI. A claim for breach of contract requires, naturally, the formation of a contract. *Nelson*, 899 F.3d at 480. Here, the Broker Sales Contract and the Fixed Annuity Product Broker Agreement were signed individually by Jarvis. ECF No. 1-1 at 7, 16. The complaint similarly alleges that *Jarvis* executed those agreements. *See* ECF No. 1 ¶ 7. There is no indication, however, that Jarvis signed the agreements on behalf of JFI. And a contract does not bind a corporation merely because a corporate officer signs the contract. *See Hubbs v. Leach*, 355 N.W.2d 470, 473 (Minn. Ct. App. 1984) (holding that contract signed by corporate officer only bound the individual officer, even though the officer's signature indicated that he was the corporation's "V.P."). Rather, whether a corporate officer can bind the corporation to a contract depends on whether the corporate officer has authority to bind the corporation. *See Temple, Brissman & Co. v.*

*Greater St. Paul Corp.*, 248 N.W. 819, 819 (Minn. 1933). Minnesota Life alleges no facts about what authority Jarvis has over JFI, nor does it make any argument about Jarvis's authority to enter into the agreements on behalf of JFI. Instead, the only allegation specific to JFI in the complaint is that Jarvis "do[es] business as JFI," ECF No. 1 ¶ 4, which falls far short of alleging that Jarvis has the authority to bind JFI to the Broker Sales Contract and the Fixed Annuity Product Broker Agreement.

The unchallenged facts in the record, then, fail to establish that JFI entered into the Broker Sales Contract and the Fixed Annuity Product Broker Agreement. Breach of contract claims asserted against nonparties to the contract fail as a matter of law. *See Kieffer v. Tundra Storage LLC*, No. 14-cv-3192 (ADM/LIB), 2016 WL 199411, at *4 (D. Minn. Jan. 15, 2016) (collecting cases). Accordingly, Minnesota Life has failed to demonstrate a legitimate cause of action for breach of contract against JFI, so its motion for default judgment against JFI is denied. *See Silver Bow Tr. U/T/A v. Verde Mobility, Inc.*, No. 24-cv-4271 (LMP/DJF), 2025 WL 1300481, at *4–5 (D. Minn. May 6, 2025) (denying motion for default judgment on claim when plaintiff could not "establish a claim for [the cause of action] under Minnesota law").

Lest the claims against JFI remain in purgatory, the Court will give Minnesota Life 60 days to decide how to proceed. Minnesota Life must either (1) voluntarily dismiss its claims against JFI; or (2) take some action to prosecute this case against JFI (which could include filing and serving an amended complaint, filing a second motion for default judgment, or some other action that signals that Minnesota Life continues to pursue its

claims against JFI). If Minnesota Life does not make this decision within 60 days, the Court will dismiss all claims against JFI for failure to prosecute. *See* Fed. R. Civ. P. 41(b).

**III. Whether Minnesota Life Has Sufficiently Proven Damages**

A party seeking a default judgment must "prove its actual damages to a reasonable degree of certainty." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir. 2001). A district court may ascertain damages "by comput[ing] from facts of record . . . the amount which the plaintiff is lawfully entitled to recover." *Pope v. United States*, 323 U.S. 1, 12 (1944). Those facts of record may derive from declarations and documentary evidence submitted by the plaintiff. *See Cutcliff v. Reuter*, 791 F.3d 875, 883 (8th Cir. 2015); *Farnam St. Fin., Inc. v. Current Foods, Inc.*, No. 24-cv-2623 (NEB/DTS), 2024 WL 7008229, at *2 (D. Minn. Nov. 7, 2024). "Once the amount of damages has been established, the court may enter judgment . . . ." *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008).

Here, Minnesota Life offers a declaration from Sara Kaufman, who is the Second Vice President and Chief Financial Officer for Individual Solutions at Minnesota Life. *See* ECF No. 12 ¶ 1. She attests that she is familiar with records relating to brokers and agents who have a contractual relationship with Minnesota Life, and that she is familiar with the process of calculating Jarvis's outstanding debt to Minnesota Life. *See id.* ¶¶ 1, 6. Kaufman explains that after "applying subsequent earned commissions by" Jarvis that offset her obligations to Minnesota Life, her outstanding balance owed to Minnesota Life

remains $78,069.84.[5] *Id.* ¶ 9. The Court concludes that sufficient evidence supports Minnesota Life's damages calculation, which is "readily discernable on the basis of undisputed evidence in the record." *Cutcliff*, 791 F.3d at 883. The Court will therefore enter default judgment against Jarvis in the amount of $78,069.84.[6]

## CONCLUSION

For these reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Minnesota Life Insurance Company's Motion for Default Judgment (ECF No. 10) is **GRANTED** as against Edie Ann Jarvis;

2. Minnesota Life's Motion for Default Judgment (ECF No. 10) is **DENIED WITHOUT PREJUDICE** as against Jarvis Financial Inc.; and

3. Judgment is entered against Jarvis, and in favor of Minnesota Life, in the amount of $78,069.84.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 2, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

---

[5] This amount is $7.48 less than the damages that Minnesota Life pleaded in its complaint. *Compare* ECF No. 1 ¶ 25, *with* ECF No. 12 ¶ 9. Because the amount sought is less than the amount pleaded in the complaint, Minnesota Life's requested damages do not run afoul of Rule 54(c), which prohibits a default judgment that "exceed[s] in amount[] what is demanded in the pleadings."

[6] To the extent that Minnesota Life seeks attorneys' fees and costs, Minnesota Life should follow the process set forth in Federal Rule of Civil Procedure 54(d) and Local Rule 54.3. Minnesota Life may also seek prejudgment interest by motion.